NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.R., K.R.

No. 1 CA-JV 22-0172
FILED 11-22-2022

Appeal from the Superior Court in Maricopa County
No. JS520115
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

R.J. Peters & Associates, P.C., Phoenix
By Rich J. Peters
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

**M C M U R D I E**, Judge:

¶1        Paul R. ("Father") appeals from the juvenile court's order terminating his parental relationship with his two children. We find no error and affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        Father and Leana I. ("Mother") are the parents of Dara,[2] born in 2011, and Sam, born in 2013. Sometime after 2013, the parents separated, and the children remained with Mother. Eventually, the superior court ordered joint legal decision-making and parenting time. Based on financial information provided by Father, the court ordered him to pay monthly child support.

¶3        According to Mother, Father would visit the children at various times but then drop out of their lives. In August 2017, based on evidence provided by Mother, the superior court ordered Father to file a copy of his driver's license and participate in a hair follicle drug test. When he did not do so, the court reduced his parenting time to every other weekend until he tested negative for illegal substances for three straight months. Father did not complete further testing, and, as he reported in the social study prepared for the termination trial, he then "dropped out [of the children's lives] and worked on himself."

¶4        Between March 2018 and October 2021, Father had no contact with the children and provided them with no cards, gifts, or letters. Also, Father only made three child support payments between 2019 and 2021. Further, although Mother had not changed her contact information, Father only asked to see the children once. Mother began a new relationship with her now-fiancé.

¶5        In October 2021, Father showed up at Mother's house to take the children for a weekend visit. Sam did not recognize Father at first. Dara

---

[1]        "We review an order terminating a parent's relationship with his or her child for an abuse of discretion and . . . . view the evidence in the light most favorable to sustaining the superior court's ruling." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013).

[2]        We use pseudonyms to protect the children's identities.

was terrified and, afterward, had a lingering fear of being removed from Mother's home. Father eventually left without the children. That same month, Mother petitioned the juvenile court to terminate Father's parental rights based on abandonment. *See* A.R.S. § 8-533(B)(1).

**¶6** At the trial, Father reported for the first time that he had not contacted the children because Mother told him he had no parenting time, threatened to have him arrested for not paying child support, and blocked his entire family from her phone. Mother denied the allegations.

**¶7** The juvenile court found that Father abandoned the children because he had no contact with them and paid only minimal support for four years. Further, despite his claims about Mother's interference, the court found Father failed to vigorously assert his parental rights in other ways, including failing to confirm or enforce his right to parenting time through the court.

**¶8** The court also made several findings to support its conclusion that termination was in the children's best interests. It found that:

> [M]other and her fiancé have been in a relationship for two years. They have been living in the same home for over a year. Mother's fiancé has expressed a desire to adopt the Children and already views them as his children. Mother desires for her fiancé to adopt the children and both indicated that they are planning to marry and will complete the adoption as soon as legally available. Mother and her fiancé are meeting all of the Children's needs. [They] also have a child in common. This is more than a potential, hypothetical adoption. Both Children call fiancé "Dad" and have expressed a desire to be adopted. Father raises the issue of fiancé's previous marriages. While the Court understands the concern, the information provided by fiancé regarding his previous marriages, including that his first marriage occurred at a very young age, and his current commitment to Mother and Children lead the court to conclude that Children are adoptable and that adoption is likely, not just possible.
>
> \*     \*     \*
>
> Children would benefit from termination because Mother and her fiancé are meeting all of Children's needs. Fiancé is involved in the day-to-day parenting of Children. Fiancé

picks Children up from school, helps with homework, attends school activities and helps provide for Children. Children have expressed a desire to be adopted by [fiancé,] and fiancé has expressed a desire to adopt Children. Fiancé's testimony is that he already views Children as his own. Fiancé is . . . providing stability for Children. Children are thriving in the care of fiancé and Mother. The social study found that the termination would be in Children's best interest and the Children's attorney's position was also that the termination is in the Children's best interest. These Children desire a Father that will remain constant in their life and will provide them with permanency.

Father appealed the termination order. This court has jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶9  Father does not challenge the juvenile court's determination that he abandoned the children. Instead, he argues that no reasonable evidence supports the court's finding that severance was in the children's best interests.

¶10  A parent's right to custody and control of his children, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). The juvenile court may terminate parental rights if it finds at least one statutory ground under A.R.S. § 8-533 by clear and convincing evidence and that termination is in the child's best interest by a preponderance of the evidence. *Id.* at 249, ¶ 12; *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶11  "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶12  Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court then balances the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests

4

of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). "[C]ourts must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶13** The court may find a child would benefit from termination if there is an adoption plan, if the child is adoptable, *Alma S.*, 245 Ariz. at 150–51, ¶¶ 13–14, or if the child "would benefit psychologically from the stability an adoption would provide." *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). A child is adoptable only if the petitioner proves the potential for adoption is "not only possible, but likely." *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370, ¶ 22 (App. 2018).

**¶14** Father first challenges the juvenile court's finding that the children are adoptable, arguing the proposed adoption was too speculative because Mother and her fiancé were not married at the time of trial and did not have a wedding date. But one need not be married to adopt. *See* A.R.S. § 8-103(A) ("Any adult resident of this state, whether married, unmarried or legally separated, is eligible to qualify to adopt children.").

**¶15** Even so, reasonable evidence in the record supports the court's finding that the proposed adoption was "more than a potential, hypothetical" benefit. The court noted that Mother and her fiancé's lives are highly entwined, her fiancé is committed to Mother and the children, and they already function as a family unit. And they planned to marry within a year, and her fiancé testified he intends to adopt the children as soon as legally possible and is prepared to do so "no matter how long it takes." Considering these facts, the court did not err by determining that the children's adoption by her fiancé was not only possible but also likely. *Cf. JS-500274*, 167 Ariz. at 7 (holding evidence insufficient when based only on the mother's contention that she wanted the child free for adoption "just in case" she got married and "just in case" her future husband wished to adopt the child).

**¶16** Father next argues the juvenile court "did not adequately consider [his] recent rehabilitative or reunification efforts, and his previous bond with the children." The court, in its order, recited testimony and evidence it considered, including all the evidence Father presented. Yet it concluded that other factors outweighed Father's previous bond and a

recent effort to visit the children. *See Jesus M.*, 203 Ariz. at 282, ¶ 12 ("The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not reweigh the evidence on review."). The court's finding that termination was in the children's best interest is supported by reasonable evidence.

**CONCLUSION**

¶17      We affirm.

